# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**BEVERLY CHARLES**

    Plaintiff,

    v. Civil Action No. _____

**DISTRICT OF COLUMBIA,**

    Defendant.

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

Plaintiff Beverly Charles, by and through undersigned counsel, respectfully submits this Complaint against Defendant District of Columbia and in support thereof states as follows:

### I. PARTIES

1. Plaintiff Beverly Charles is an individual residing at 13305 Arden Way, Apt. 32, Laurel, Maryland 20708.

2. Defendant, the Department on Disability Services (DDS), within the District of Columbia is a municipal corporation and political subdivision that operates as the local government for the District of Columbia, with its principal place of business located in Washington, D.C.

3. At all times relevant to this Complaint, Defendant employed Plaintiff as a Service Coordinator in the Department on Disability Services.

### II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this action arises under federal law, specifically the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

et seq.

5. This Court has supplemental jurisdiction over Plaintiff's local law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and because Defendant conducts business in this judicial district.

7. Plaintiff has satisfied all administrative prerequisites to filing this lawsuit, including filing charges with the Equal Employment Opportunity Commission and receiving a right to sue letter.

### III. FACTUAL ALLEGATIONS

8. Plaintiff has been employed by Defendant's Department on Disability Services as a Service Coordinator for over twenty-four years, consistently demonstrating exemplary performance in serving the District's most vulnerable citizens with disabilities.

9. Plaintiff suffers from several documented disabilities that substantially limit major life activities, including chronic asthma, chronic obstructive lung disorder requiring twenty-four hour oxygen dependence, immunocompromised status, and severe allergies to mold, mildew, ragweed, dust mites, and cat dander.

10. Plaintiff's disabilities and medical conditions are documented in her Family and Medical Leave Act records maintained by Defendant's Human Resources department.

11. At all times relevant hereto, Defendant was aware of Plaintiff's disabilities and medical conditions.

12. On May 24, 2024, despite management's actual knowledge of Plaintiff's respiratory disabilities and documented severe allergies to mold and mildew, Defendant's management directed Plaintiff to visit 3814 Hayes Street, NE, Apartment Number 3, Washington, DC 20019.

13. This assignment was prompted by complaints regarding poor housing conditions, mold contamination, and adverse health impacts on a client residing at the premises.

14. Defendant's assignment of Plaintiff to inspect mold-contaminated premises violated the Americans with Disabilities Act because Defendant knew that exposure to mold would

exacerbate Plaintiff's chronic respiratory conditions and allergies.

15. Defendant failed to provide Plaintiff with any protective equipment despite knowing she would be exposed to environmental hazards that would directly impact her documented disabilities.

16. Plaintiff was not trained to assess mold presence or contamination levels, yet Defendant required her to enter and inspect the potentially hazardous environment.

17. During and immediately following the site visit, Plaintiff experienced severe allergic reactions including itchy and watery eyes, which persisted and worsened throughout the day, resulting in puffy eyes and wheezing.

18. On May 25, 2024, Plaintiff sought emergency medical treatment at Patient First urgent care facility in Laurel, Maryland, due to the exacerbation of her respiratory condition caused by the mold exposure.

19. Plaintiff's symptoms continued through the weekend and into the following week, requiring ongoing medical consultation with her allergy and asthma specialists and primary care physician.

20. The mold exposure further compromised Plaintiff's already fragile respiratory condition due to her immunocompromised status.

21. Following Plaintiff's protected activity in September 2024, when she responded to a supervisor's email and copied her union representative to address workplace concerns, Supervisor Yvette Riddick began engaging in a pattern of retaliatory behavior against Plaintiff.

22. On September 9, 2024, Plaintiff submitted her work itinerary which included Individual Support Plan meetings for clients J.Q. on September 10, 2024 at 10:00 AM and A.P. on September 10, 2024 at 3:00 PM.

23. Ms. Riddick rejected Plaintiff's properly submitted itinerary and demanded that Plaintiff provide additional documentation stating that it was important to make some form of contact note indicating proof that the meetings were occurring.

24. Ms. Riddick's demand was unnecessary and excessive, as the Individual Support Plan schedule already contained the required documentation confirming that the clients and

their families had input into the scheduling and location of the meetings.

25. After Plaintiff complied with Ms. Riddick's demands, Ms. Riddick then called the clients' family members directly to verify Plaintiff's scheduled meetings, thereby undermining Plaintiff's professional relationships and subjecting her to a level of scrutiny not applied to other employees.

26. On September 17, 2024, when Plaintiff arrived at the office after experiencing unexpected traffic delays during her normal commute, Ms. Riddick was standing at another employee's desk specifically to monitor Plaintiff's time of arrival.

27. Despite Plaintiff's standard practice of informing Ms. Riddick of her arrival time and reflecting such time in the PeopleSoft system, and despite Plaintiff leaving a voicemail message as was customary, Ms. Riddick publicly berated Plaintiff in front of her peers.

28. Ms. Riddick stated in a disparaging tone and in the presence of other employees that Plaintiff should not leave voicemail messages but should send emails instead, thereby creating intentional public embarrassment and humiliation for Plaintiff.

29. On September 6, 2024, Ms. Riddick sent an email scheduling a mandatory staff meeting for September 12, 2024, which conflicted with Plaintiff's previously approved retirement workshop scheduled for the same date.

30. Ms. Riddick denied Plaintiff's retirement workshop request in favor of the staff meeting, thereby denying Plaintiff professional development opportunities available to other employees.

31. During the September 12, 2024 staff meeting conducted via Microsoft Teams, Ms. Riddick mandated that all participants turn on their cameras without any policy basis for such requirement and failed to inform participants that the meeting was being recorded.

32. Despite Plaintiff's documented excellent performance over her twenty-four year career, Ms. Riddick threatened Plaintiff with disciplinary action through a Performance Improvement Plan.

33. Plaintiff's performance data demonstrates that she consistently meets or exceeds all agency standards, including an Individual Support Plan submission rate of ninety-three percent, which exceeds the required ninety percent standard.

34. Plaintiff's Level of Need submission rate is ninety-five percent, which exceeds the required eighty-six percent standard.

35. Plaintiff's incident follow-up rate is ninety-two point three one percent, which exceeds the required ninety percent standard.

36. Plaintiff's issues follow-up rate is ninety-seven point two five percent, and her overall issues closure rate is ninety-six point zero one percent.

37. Plaintiff has exceeded training requirements by attending multiple professional development sessions and maintaining full compliance with all continuing education requirements.

38. Ms. Riddick's threat of disciplinary action against Plaintiff despite her exemplary performance record constitutes discriminatory treatment that was not applied to similarly situated employees without disabilities.

39. Ms. Riddick's conduct has adversely impacted Plaintiff's health, causing increased asthma exacerbations, disrupted sleep patterns, increased anxiety levels, and created significant uncertainty and stress related to her employment. This also resulted in plaintiff receiving clinical therapy as well as being placed on anti-anxiety medication.

40. On April 4, 2025, Plaintiff provided medical documentation from her treating physician clearing her for telework accommodation and recommending telework Monday, Wednesday, Thursday, and Friday as a reasonable accommodation for her disabilities.

41. On April 15, 2025, Defendant initially approved Plaintiff's reasonable accommodation request based on her physician's medical documentation.

42. On May 5, 2025, when Defendant requested that Plaintiff return to in-person work, Plaintiff indicated that she had medical concerns about returning to the office environment, which was consistent with her documented disabilities and physician's recommendations. Plaintiff was also not cleared for return to work by her physician.

43. On May 13, 2025, Defendant held an interactive process meeting with Plaintiff and her union representative, Marla Sams, during which the parties reached an agreement for Plaintiff to continue medical leave through May 30, 2025, followed by situational telework beginning June 2, 2025.

44. On May 30, 2025, Defendant issued a written reasonable accommodation letter memorializing the agreed-upon accommodation, which provided Plaintiff with situational telework for four days per week in addition to her one day of routine telework. This arrangement would be based upon receiving a clearance to return to work by the attending physician.

45. Despite having clear medical documentation supporting telework and having issued written approval for the accommodation, Defendant created artificial barriers by demanding additional "medical clearance to return to work" that was not required under the accommodation agreement.

46. On June 2, 2025, Plaintiff did not return to in-person work due to a lack of clearance to return to work from her physician.

47. On June 16, 2025, Defendant held another interactive process meeting during which Plaintiff explained that she was unable to return to in-person work but could perform her essential job functions through the approved telework accommodation.

48. On June 17th 2025, Plaintiff experienced a medical emergency and was treated at Johns Hopkins Howard County General Hospital. Plaintiff received the directive to follow-up with primary care physician.

49. On June 27, 2025, despite having approved Plaintiff's telework accommodation and having medical documentation supporting such accommodation, Defendant unilaterally placed Plaintiff on Absent Without Leave status.

50. Defendant's placement of Plaintiff on Absent Without Leave status was retaliatory and discriminatory because it occurred despite Defendant's prior approval of Plaintiff's reasonable accommodation request and in contradiction of the medical documentation supporting telework.

## IV. FIRST CAUSE OF ACTION

**(Violation of Americans with Disabilities Act - Failure to Accommodate)**

50. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

51. At all times relevant hereto, Plaintiff was an individual with a disability within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12102.

52. At all times relevant hereto, Plaintiff was a qualified individual with a disability who could perform the essential functions of her position with or without reasonable accommodation.

53. Defendant was aware of Plaintiff's disabilities and the need for reasonable accommodation.

54. Plaintiff requested reasonable accommodations, including telework arrangements that would allow her to avoid exposure to environmental triggers that exacerbate her respiratory disabilities. The request for reasonable accommodation was previously denied three time by the defendant without providing a reason for the denial.

55. The requested accommodations were reasonable and would not have imposed an undue hardship on Defendant.

56. Defendant failed to provide reasonable accommodations and failed to engage in the interactive process in good faith.

57. Defendant's conduct in assigning Plaintiff to mold-contaminated environments, creating artificial barriers to approved accommodations.

## V. SECOND CAUSE OF ACTION

**(Violation of Americans with Disabilities Act - Discriminatory Treatment)**

58. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

59. Defendant subjected Plaintiff to different terms and conditions of employment because of her disabilities.

60. Defendant's assignment of Plaintiff to hazardous work environments known to exacerbate her documented disabilities constituted discriminatory treatment.

61. Defendant's retaliatory supervision, excessive scrutiny, and threats of disciplinary action despite exemplary performance were motivated by Plaintiff's disability status and

requests for accommodation.

62. Defendant's conduct violates the Americans with Disabilities Act, 42 U.S.C. § 12112.

## VI. THIRD CAUSE OF ACTION

### (Violation of Americans with Disabilities Act - Retaliation)

63. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

64. Plaintiff engaged in protected activity under the Americans with Disabilities Act by requesting reasonable accommodations for her documented disabilities.

65. Defendant subjected Plaintiff to adverse employment actions, including retaliatory supervision, public humiliation, threats of disciplinary action, and placement on Absent Without Leave status.

66. The adverse employment actions occurred because of Plaintiff's protected activity under the Americans with Disabilities Act.

67. Defendant's retaliatory conduct violates 42 U.S.C. § 12203.

## VII. FOURTH CAUSE OF ACTION

### (Violation of Title VII - Retaliation)

68. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

69. Plaintiff engaged in protected activity under Title VII by reporting unsafe working conditions and opposing discriminatory employment practices.

70. Defendant subjected Plaintiff to adverse employment actions following her protected activity, including increased supervisory scrutiny, public humiliation, denial of professional development opportunities, and threats of disciplinary action.

71. There is a causal connection between Plaintiff's protected activity and the adverse employment actions, as evidenced by the timing and nature of Defendant's conduct.

72. Defendant's retaliatory conduct violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3.

## VIII. FIFTH CAUSE OF ACTION

**(Hostile Work Environment)**

73. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

74. Defendant created and maintained a hostile work environment through severe and pervasive conduct that altered the terms and conditions of Plaintiff's employment.

75. The hostile conduct included assigning Plaintiff to work environments that exacerbated her documented disabilities, subjecting her to increased scrutiny not applied to other employees, public humiliation by supervisory staff, and creating artificial barriers to reasonable accommodations.

76. The hostile work environment was based on Plaintiff's disability status and her engagement in protected activity.

77. The hostile work environment has caused Plaintiff severe emotional distress, physical harm, and adverse health consequences.

## IX. SIXTH CAUSE OF ACTION

**(Violation of District of Columbia Human Rights Act)**

78. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

79. Defendant's conduct violates the District of Columbia Human Rights Act's protections against disability discrimination and retaliation in employment.

80. Defendant's failure to provide reasonable accommodations, discriminatory treatment, and retaliatory conduct constitute unlawful employment practices under D.C. Code § 2-

1402.11.

## X. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

A. Assume jurisdiction of this matter and set it for trial by jury;

B. Enter judgment in favor of Plaintiff and against Defendant on all counts;

C. Award Plaintiff compensatory damages for lost wages, benefits, and out-of-pocket expenses in an amount to be determined at trial;

D. Award Plaintiff compensatory damages for emotional distress, pain, suffering, and mental anguish in an amount to be determined at trial;

E. Award Plaintiff punitive damages for Defendant's willful and wanton conduct in an amount sufficient to deter similar conduct in the future;

F. Enter injunctive relief requiring Defendant to implement proper reasonable accommodations for Plaintiff's disabilities, provide training for supervisory staff on compliance with federal and local civil rights laws, and restore Plaintiff to appropriate employment status;

G. Award Plaintiff her reasonable attorney's fees and costs as provided by law; and

H. Grant such other and further relief as this Court deems just and proper.

---

**Respectfully submitted,**

/s/ Charles Tucker Jr.
CHARLES TUCKER JR., ESQ.
D.C. Bar No. [ 993515]
Tucker McCann Law Group LLP
4933 Auburn Avenue, 2nd Floor
Bethesda, MD 20814
Office: (301) 338-6331
Email: ctucker@tuckermccanngroupllp.onmicrosoft.com

*Attorney for Plaintiff*

**JURY TRIAL DEMANDED**